**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| JAMES THOMAS DIXON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 08-CV-580-TLW |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**ORDER AND OPINION**

Plaintiff James Thomas Dixon seeks judicial review of a decision of the Commissioner of the Social Security Administration denying his claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 1382c(a)(3)(A). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. [Dkt. # 9].

**Procedural History**

Plaintiff's application for disability insurance benefits was filed January 12, 2005. [R. 77]. A hearing before Administrative Law Judge ("ALJ") John Volz was held on August 13, 2007. [R. 274]. By decision dated August 27, 2007, the ALJ denied plaintiff relief. [R. 40]. On October 9, 2007, plaintiff sought review before the Appeals Council. [R. 62]. On February 9, 2008, the Appeals Council remanded the case to the ALJ with instructions for additional proceedings. [R.68]. A second hearing was held before the ALJ on May 12, 2008. [R.304]. The ALJ again denied plaintiff relief. Plaintiff's second request for review was denied by the Appeals Council. [R. 5]. This denial represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 404.981.

**Standard of Review**

The role of the Court in reviewing a decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination whether the record as a whole contains substantial evidence to support the decision and whether the correct legal standards were applied. See Briggs ex. rel. Briggs v. Massanari, 248 F.3d 1235, 1237 (10th Cir. 2001); Winfrey v. Chater, 92 F.3d 1017 (10th Cir. 1996); Castellano v. Secretary of Health & Human Serv., 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Casias v. Secretary of Health & Human Service, 933 F.2d 799, 800 (10th Cir. 1991). Even if the Court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. Hamilton v. Secretary of Health & Human Services, 961 F.2d 1495 (10th Cir. 1992).

**Background**

Plaintiff was born on July 11, 1950, and was 54 years old on the date of the second hearing before the ALJ. [R.20, 77]. Plaintiff has a high school degree. In addition, he completed 32 credit hours at St. Petersburg Junior College, and 40 credit hours in Data Processing and vocational sheet metal training. [R.176]. Plaintiff served in the United States Army from 1969 until he was honorably discharged in 1978, doing clerical tasks. [R. 216]. He was married to Edith Gale Miller from 1972 until 1985. In 1983, he pleaded guilty to two counts of attempted sexual battery of his nine year old daughter. [R. 245]. He was sentenced to 40 years in the penitentiary, and served 16

of those years in Florida until his release in 2000. [R. 78, 112, 161, 216]. His daughter died at age 24, one month before he was discharged from prison. [R. 161]. He has one other adult daughter and one adult son, but he has not seen his children since 1985. [R. 176, 216]. He has three brothers and one step sister. His parents, step mother, and a third brother are deceased. He maintains no contact with his family. [R. 176]. Plaintiff receives medical treatment from the Veteran Hospital [R. 116-174, 226-269], and $2,471 per month in Veteran benefits, based on 70 percent physical and mental disability and 30 percent unemployment. [R. 282].

In the early 1990's, while in prison, plaintiff corresponded by mail with a Philippine woman. When he was released she stopped corresponding after she learned the reason for his incarceration. Four months later she moved to Canada and they began talking frequently on the telephone. In December 2002, both plaintiff and the woman tried to get Visas so they could meet. Plaintiff was denied a Visa to enter Canada, because of his criminal record. [R. 169]. In March 2003, the woman was denied a Visa to enter the United States. In April 2003, she applied for a Mexican Visa. Plaintiff was informed by the Mexican Embassy that his prison record would not prevent him from entering Mexico. [R. 153]. Beginning in December 2003, plaintiff spent considerable "money and energy" to secure their relationship, spending $200 per month on long distance telephone calls to talk to her. The woman has two teenage sons. [R. 136]. In February 2004, plaintiff continued pursuing the relationship, processing paperwork for her and the two boys to enter the United States. [R. 127]. By April 2004, plaintiff was communicating with her in an effort toward marriage. [R. 125]. By March 2006, plaintiff's relationship with the Philippine woman came to an end.

Plaintiff next began corresponding with a 32 year old Vietnamese woman. [R. 245]. In September 2005, plaintiff flew 12 hours from Tulsa to Vietnam with two other gentlemen to meet

women, as potential brides. All three men acquired Vietnamese fiances while there. [R. 254, 292]. In January 2007, plaintiff flew again to Vietnam to bring his finance to the United States. He wanted to have sexual relations, so he requested and was prescribed Levitra, a drug used to achieve and maintain an erection.[1] They were married by March 2007. [R. 216]. Although plaintiff reports that he does not like to be around people, he does attend church services regularly and enjoys being a substitute Sunday School teacher. [R. 159, 169].

Aside from military service, plaintiff has an employment history as an upholstery worker, machine setter, field engineer technician, metallurgist technician and personnel specialist. [R. 176, 216]. While in prison he completed a vocational course and was hired by Pride Industries where he worked from 1987 until his release in 2000. His job with Pride Industries involved training others to work on machines. [R. 112]. He worked as a shear operator from May 2000 until he was laid off in December 2003, and as a senior fabrication operator from July 2004 until he was laid off in September 2004. [R. 84,112].

Plaintiff's alleged physical disability includes degenerative disc disease in his back, hip, and neck. [R. 83]. Plaintiff's alleged mental disability is major depression disorder. <u>Id.</u> He also has a history of gout and hypertension. [R. 113, 115]. In assessing plaintiff's qualification for disability benefits, the ALJ found at step one that plaintiff has not engaged in any substantial gainful activity since October 1, 2004, the alleged disability onset date, and that plaintiff met the insured status requirements through December 31, 2009. [R. 15]. At step two, the ALJ determined plaintiff's severe impairments to be degenerative disc disease, obesity, depression, and anxiety disorder. [R. 15]. The ALJ found that plaintiff's high blood pressure and gout were not severe because they were

---

[1] The explanation and use of the medication was obtained online at <u>www.drugs.com.</u>

controlled through medication, and his gait was normal. [R 16]. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. [R. 16]. The ALJ found plaintiff had the residual functional capacity ("RFC") to perform medium work as defined in 20 CFR § 404.1567(c), except he is only able to perform simple tasks with routine supervision and not able to have continuous interaction with co-workers.[2] [R. 17]. At step four, the ALJ found that plaintiff was unable to perform his past relevant work as a shear cutter which is heavy exertion (but performed at medium exertion), or machine adjuster which is generally performed at a medium exertion. [R. 20]. At step five, the ALJ considered plaintiff's age, education, work experience, RFC, and the Medical-Vocational Guidelines ("Grid") and found that plaintiff has the capability to perform all or substantially all of the requirements within medium work, restricted by the limitations addressed above. The ALJ consulted a vocational expert to determine the extent plaintiff's limitations impeded his ability to perform work in the national economy. The vocational expert listed two unskilled jobs in each level of exertion: medium (laundry worker and general laborer), light (laundry sorter and mail room clerk), and sedentary (sorter and clerical mailer). [R. 21]. The ALJ concluded that plaintiff was not disabled within the meaning of the Act. [R. 22]. This finding was at step five of the sequential inquiry outlined in Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing the five steps in detail).[3]

---

[2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 CFR § 404.1567.

[3] The five-step sequence provides that the claimant (1) is not gainfully employed, (2) has a severe impairment, (3) has an impairment which meets or equals an impairment presumed by the Secretary to preclude substantial gainful activity, listed in Appendix 1 to the Social Security

**Issues**

Plaintiff raises three issues on appeal:

1. Whether the ALJ erred by failing to evaluate all of plaintiff's limitations in combination.

2. Whether the ALJ's hypothetical question to the vocational expert reflected all of plaintiff's limitations, both physical and mental, with precision.

3. Whether the ALJ's determination is supported by substantial evidence.

[Dkt. #15 at 2].

**Discussion**

A claimant for disability benefits bears the burden of proving a disability. 42 U.S.C. § 423 (d)(5); 20 C.F.R. § 404.1512(a). "Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden plaintiff must provide medical evidence of an impairment and the severity of his impairment during the time of his alleged disability. 20 C.F.R. § 404.1512(b). Disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3). "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R.

---

Regulations, (4) has an impairment which prevents him from engaging in his past employment, and (5) has an impairment which prevents him from engaging in any other work, considering his age, education, and work experience. Ringer v. Sullivan, 962 F.2d 17 (10th Cir. 1992) (unpublished) citing Williams v. Bowen, 844 F.2d at 750-52.

§ 404.1508. The evidence must come from "acceptable medical sources" such as licensed and certified psychologists and licensed physicians. 20 C.F.R. § 404.1513(a).

As his first assignment of error, plaintiff relies on a consultative psychological evaluation performed by Gordon Minor, Ph.D. on May 31, 2007, who opined that plaintiff had seven "moderate limitations" in his mental functioning which affect his ability to sustain activity over a normal workday and workweek on an ongoing basis. The activities of "moderate limitations" as assessed by Dr. Gordon included plaintiff's ability to:

(1) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;

(2) sustain an ordinary routine without special supervision;

(3) work in coordination with others or in proximity to others without being distracted by them;

(4) complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods;

(5) accept instructions and respond appropriately to criticism from supervisors;

(6) get along with coworkers without distracting them;

(7) set realistic goals or make plans independently of others.

[R. 222-224]. Dr. Gordon applied the agency's definition for moderate limitation, which is, "affects but does not preclude [the] ability to perform basic work functions." [R. 222]. In the ALJ's first decision, he considered Dr. Gordon's seven limitations and found that they would not preclude plaintiff from performing light exertional work. [R. 44]. He also adopted the opinion of the vocational expert who testified at the first hearing. He found that plaintiff was capable of performing light exertional jobs and that such jobs existed in the national economy. The vocational expert's

opinion was based on the ALJ's definition of "moderate" as being "equivalent to a C average in school." [R. 302].

The Appeals Court reversed the ALJ's decision because it was based on Dr. Gordon's May 31, 2007, evaluation rather than the record as a whole and on an incorrect definition of moderate limitation. [R.68-70]. The Appeals Council held:

> The decision does not address a March 16, 2005 consultative examination report offered by Denise LaGrand, Psy.D. finding the claimant to have average concentration, persistence, and pace. The decision also does not address State Agency findings of fact in accordance with Social Security Ruling 96-6p. A medical consultant to the State Agency found the claimant to have no significant limitations in sustained concentration and persistence (Exhibit 6F). The medical evidence of record appears to be consistent with the medical opinions offered by Denise LaGrande, Psy.D. and by the state Agency (Exhibit 1F, 10F). Medical Expert testimony is needed to clarify the nature and severity of the claimant's medical impairments. In considering this evidence, further evaluation of the claimant's residual functional capacity is needed.

[R. 68]. In sum, the ALJ was to evaluate plaintiff's RFC based on the entire period at issue, rather than limiting it to Dr. Gordon's 2007 opinion; obtain evidence from a medical expert to clarify the nature and severity of plaintiff's impairments; supplement evidence from a vocational expert to clarify plaintiff's capacity/limitations to perform other jobs in the national economy; and proffer a hypothetical question that reflects the specific capacity/limitations established by the record as a whole. [R. 69].

On remand, the ALJ complied with these directives. He conducted a second hearing, elicited testimony from a medical expert, and proffered a revised hypothetical question to a different vocational expert. [R. 304-327]. The ALJ issued his decision, citing evidence in the record as a whole, addressing Dr. Gordon's evidence, and weighing additional medical evidence to formulate his conclusion that plaintiff could perform medium work with the specific limitations discussed

above. Plaintiff now claims the ALJ erred because at the second hearing his hypothetical question to the vocational expert did not include all of Dr. Gordon's seven moderate limitations, in combination with each other, and the ALJ did not adopt Dr. Gordon's combined limitations in evaluating plaintiff's RFC. Plaintiff contends that Dr. Gordon's seven moderate limitations are consistent with the record as a whole and should have been included to determine plaintiff's capacity to work. [Dkt. # 15 at 3-4).

The Court disagrees. The ALJ properly considered all the evidence of record and relied on the evidence as a whole to formulate plaintiff's RFC. He gave specific evidentiary reasons to support his conclusion that plaintiff had the RFC to perform medium exertional work, limited to simple tasks with routine supervision, and minimal continuous contact with co-workers. He found the plaintiff capable of medium exertion work based, in part, on his own conduct. The ALJ stated:

> While the claimant alleges he has difficulty walking (due to problems with his feet) and does not like to be around people, the evidence shows that he visited Vietnam in 2005 to see his fiance (Exhibit 10F/29). On January 5, 2006, he reported that he would be returning to Vietnam to bring his fiance to the United States (Exhibits 10F/8).

[R. 20]. Clearly the ALJ's reliance on plaintiff's physical and mental stamina to make two separate twelve-hour flights from the United States to Vietnam was evidence which undermined Dr. Gordon's opinion as to plaintiff's purported limitations in mental functioning.

Additionally, although the ALJ found plaintiff's severe impairments to be degenerative disc disease, obesity, depression and anxiety, he did not find those conditions severe enough to meet or medically equal the criteria specified in the Listing of Impairments. The ALJ applied listing 1.04 to evaluate plaintiff's spine disorder; SSR 02-1p to evaluate his obesity, and listing 12.04 to evaluate his mental impairment. [R. 16]. Based on the evidence, the ALJ found:

> In activities of daily living, the claimant has <u>mild</u> restrictions. He lives alone, prepares meals, does household chores, shops, pays bills and manages money, and drives. (Exhibit 5F).
>
> In social functioning, the claimant has <u>moderate</u> difficulties. While the claimant has indicated he does not like to be around people, he goes out alone to go shopping and attends VVA and church (Exhibit 5F).
>
> With regard to concentration, persistence or pace, the claimant has <u>mild</u> difficulties. The claimant reads and watches TV. During evaluation, he was able to concentrate on the tasks at hand. (Exhibit 5F).
>
> As for episodes of decompensation, the claimant has <u>not</u> experienced any extended episodes of decompensation.

[R. 17]. (emphasis added). In so doing, the ALJ adopted the psychiatric review assessment made by Janice Smith, Ph.D. on April 12, 2005. [R. 199]. In assessing plaintiff's mental functioning capacity, Dr. Smith opined:

> Claimant is able to understand, remember, and carry out simple and complex tasks under routine supervision. He is able to complete a normal work day and work week from a mental standpoint, and he can adapt to a work setting. He cannot relate effectively to the general public. He can work in a setting in which he works primarily alone with only superficial and intermittent interactions with coworkers and supervisors for work purposes.

[R. 205]. Dr. Smith's opinion as to plaintiff's mental functioning is consistent with the physical functioning assessment of Judy Marks-Snelling, D.O. Dr. Snelling opined that plaintiff had the physical RFC to occasionally lift 50 pounds, frequently lift 25 pounds, stand or walk for about 6 hours in an 8-hour workday and sit for about 6 hours in an 8-hour workday. [R. 209]. The ALJ adopted Dr. Marks-Snelling's opinion by finding that plaintiff could perform medium exertion level work. Thus, the ALJ concluded:

> great weight is given to the State agency medical consultants regarding the claimant's impairments as their opinions are well-supported by the objective medical evidence and are not inconsistent with the other substantial evidence in the case record.

[R. 20]. Thus, the Court finds no error in the ALJ's failure to include all of Dr. Gordon's seven moderate limitations, in combination, in his assessment of plaintiff's RFC.

As his second assignment of error, plaintiff argues that the ALJ's hypothetical question to the vocational expert failed to include Dr. Gordon's seven moderate limitations, in combination, because by including them at the first hearing the vocational expert opined that no jobs existed that plaintiff could perform on a sustained basis. The Court finds no merit to this argument.

At the first hearing, the ALJ did not include in his hypothetical question medical evidence covering the entire adjudiciary period. At the second hearing, the hypothetical was broad enough to encompass all the evidence of record. The ALJ's hypothetical was brief and concise: "Give me a hypothetical claimant of this claimant's age, educational background and prior work experience who could do moderate exertional level work. Confined to simple, uncomplicated tasks with routine supervision but no continuous reaction to employees." The ALJ equated moderate as medium exertion work. [R. 322].

A hypothetical question need only reflect impairments and limitations that are borne out of the evidentiary record. The ALJ is not bound by the vocational expert's opinion in response to a hypothetical question which includes purported impairments that are not accepted as true by the ALJ. See Decker v. Chater, 86 F.3d 953, 955 (10th Cir. 1996). The ALJ clearly rejected Dr. Gordon's seven moderate limitations in view of his reference to plaintiff's capability to make two 12-hour over seas flights to effectuate his fiance's move and relocation to this country.

As his third assignment of error, plaintiff contends that because the ALJ did not incorporate Dr. Gordon's seven moderate limitation in his assessment of plaintiff's RFC, his determination is not supported by substantial evidence.

The Court must examine the record closely to determine whether substantial evidence supports the ALJ's determination. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Winfrey v. Chater, 92 F.3d 1017, 1019 (10th Cir. 1996). Plaintiff argues that the ALJ did not give proper weight to Dr. Gordon's opinion. The ALJ summarized the evaluation performed by Dr. Gordon and considered the results of various personality and mental functioning tests performed by Dr. Gordon. The ALJ stated:

> In the most recent psychological testing of record, Minor W. Gordon, Ph.D., evaluated the claimant on May 25, 2007. Dr. Gordon noted a gross estimate of claimant's level of intelligence based on casual conversation was average, he could pass judgment in a work situation, avoid common danger, and maintain his own personal hygiene. He readily admitted to thinking people were against him. He also admitted to thoughts of suicide but no intent. On the Wechsler Adult Intelligence Scale-II, he earned a full-scale IQ score of 97. On the Beck Depression Inventory, the claimant earned a total of 36, which is interpreted as an individual suffering from an extremely severe level of depression and, on the Beck Anxiety Inventory, he earned a total score of 22, which is interpreted as an individual suffering from a moderate level of anxiety. There is no significant evidence of memory impairment. Dr. Gordon diagnosed the claimant with major depression, severe, without psychotic symptoms; social anxiety disorder, mild to moderate; and a GAF of 55 (Exhibit 9F).[4]

[R. 18]. The ALJ then set forth Dr. Gordon's opinion that plaintiff's mental functioning included the seven moderate limitations, listed above. See supra, p. 7.

The ALJ next summarized the mental status examination conducted by Denise LaGrand, Ph.D. conducted on March 16, 2005. He stated:

> The claimant reports he dreams of dying every night. He indicated he had made on[e] previous suicide attempt by overdose. Testing revealed the claimant's ability for immediate recall of verbally presented numerical information was low average; his recent memory and long-term memory were adequate; his knowledge of the world around him was average; he showed average ability for simple calculations; he gave a correct, abstract interpretation of both common proverbs presented; his capacity for

---

[4] On the GAF Scale Sheet, a GAF between 51-60 indicates moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with co-workers). Id.

12

associative thinking and verbal concept was low average; and based on his overall cognitive level and his ability to function appropriately socially and emotionally, his judgment was fair. His estimate IQ was in the average range. The claimant was diagnosed with major depression, moderate; pain disorder; and a GAF of 45 (Exhibit 2F).[5]

[R. 19]. The ALJ reviewed the medical records from the Veteran Hospital, plaintiff's treating source. He stated:

Records from the VA show the claimant was being treated for complaints of depression. On January 28, 2003, his Zoloft dosage was increased, and he was to continue psychothearpy (Exhibit 1F). Records dated July 9, 2001, revealed x-ray evidence of little narrowing of the L5-S1 disc space and early degenerative vertebral spurring of the lower lumbar spine. X-rays taken on August 1, 2002, show evidence of degenerative disc disease, primarily associated with C6-7, with narrowing and spondylosis. He was diagnosed with degenerative disc disease. On April 17, 2007, it was noted that the claimant lost 5 pounds since his last visit; he weighed 210 pounds (Exhibit 10F).

[R. 19]. The ALJ considered consultative examination by Beau Jennings, D.O. on March 30, 2005. He stated:

The physical examination revealed the claimant was 5 feet 10 inches tall, weighed 227 pounds, and his blood pressure was 142/80. Range of motion (ROM) in his neck was diminished in flexion and extension. Shoulder ROM was limited to 90 degrees on the left and abduction, and his right wrist was limited in extension. He could touch his fingers to his thumbs and manipulate small objects well. With regard t his lower extremities, the claimant's gait was normal. There was no joint redness, tenderness, or swelling. Dr. Jennings assessed the claimant with chronic neck, lumbar, and right hip pain, gout, hypertension, and obesity. (Exhibit 3F).

[R. 19]. The ALJ also found plaintiff's testimony as to the limiting effect of his impairments not entirely credible. Thus, the ALJ factored out plaintiff's own subjective statements from the medical evidence of record and gave greater weight to objective evidence and plaintiff actual physical and mental functioning over the entire period of adjudication. In so doing, the ALJ concluded that

---

[5] A GAF between 41-50 indicates serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). Id.

plaintiff had the physical and mental functioning capacity to perform sedentary, light and medium level exertion work. He also made accommodation for plaintiff's "marked limitation" which is his inability to interact appropriate with the general public [R. 20]. Thus, the Court finds that substantial evidence supports the ALJ's determination in this case.

## Conclusion

Based on the foregoing, the Court AFFIRMS the decision of the Commission denying disability benefits to plaintiff.

IT IS SO ORDERED this 5th day of March, 2010.

_____
T. Lane Wilson
United States Magistrate Judge